**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

```
ALBERT C. BURGESS, JR.,        )
                               )
                Plaintiff,     )
                               )
                v.             )        1:11CV316
                               )
DAVID B. WILLIAMS, et al.,     )
                               )
                Defendant(s).  )
```

**MEMORANDUM OPINION AND ORDER**

This case comes before the undersigned United States Magistrate Judge for review of Plaintiff's "Amended Complaint-Objection to Order of this Court" (Docket Entry 5), pursuant to 28 U.S.C. § 1915A(a) and (b). For the reasons that follow:

1) for each of the 33 "Counts" or "Claims" in the "Amended Complaint-Objection to Order of this Court" (see Docket Entry 5, ¶¶ 6-235) that Plaintiff wishes to pursue, he will be ordered to submit: A) a separate, new complaint; and B) either a $350.00 filing fee or an application to proceed as a pauper;

2) Plaintiff will be ordered to file a separate memorandum of not more than five pages with each new complaint as to "Count One" (id., ¶¶ 6-16), "Count Two" (id., ¶¶ 17-22), "Count Three" (id., ¶¶ 23-37), "Claim Four" (id., ¶¶ 38-45), "Claim Five" (id., ¶¶ 46-55), "Claim Seven" (id., ¶¶ 63-69), "Claim Eleven" (id., ¶¶ 86-93), "Claim Twelve" (id., ¶¶ 94-100), "Claim Thirteen" (id., ¶¶ 101-05), "Claim Twenty" (id., ¶¶ 142-47), "Claim Twenty One" (id., ¶¶ 148-

52), or "Claim Twenty Five" (<u>id.</u>, ¶¶ 169-77) of the "Amended Complaint-Objection to Order of this Court," and to show cause in each such memorandum why each such new complaint should not be transferred to another district via 28 U.S.C. § 1406(a);

3) Plaintiff will be ordered to file a <u>separate</u> memorandum of not more than five pages along with <u>each</u> new complaint as to "Claim Twenty Nine" (Docket Entry 5, ¶¶ 196-201), "Claim Thirty" (<u>id.</u>, ¶¶ 202-07), or "Claim Thirty One" (<u>id.</u>, ¶¶ 208-13) of the "Amended Complaint-Objection to Order of this Court," and to show cause in each such memorandum why each such new complaint should not be dismissed for want of subject matter jurisdiction due to Plaintiff's lack of standing;

4) Plaintiff will be ordered to file a <u>separate</u> memorandum of not more than five pages along with <u>each</u> new complaint as to "Claim Nine" (<u>id.</u>, ¶¶ 79-82), "Claim Ten" (<u>id.</u>, ¶¶ 83-85), "Claim Thirteen" (<u>id.</u>, ¶¶ 101-05), "Claim Fourteen" (<u>id.</u>, ¶¶ 106-10), "Claim Fifteen" (<u>id.</u>, ¶¶ 111-20), "Claim Sixteen" (<u>id.</u>, ¶¶ 121-25), "Claim Seventeen" (<u>id.</u>, ¶¶ 126-32), "Claim Eighteen" (<u>id.</u>, ¶¶ 133-36), "Claim Nineteen" (<u>id.</u>, ¶¶ 137-41), "Claim Twenty" (<u>id.</u>, ¶¶ 142-47), "Claim Twenty One" (<u>id.</u>, ¶¶ 148-52), "Claim Twenty Two" (<u>id.</u>, ¶¶ 153-57), "Claim Twenty Three" (<u>id.</u>, ¶¶ 158-65), "Claim Twenty Five" (<u>id.</u>, ¶¶ 169-77), "Claim Twenty Six" (<u>id.</u>, ¶¶ 178-83), "Claim Twenty Nine" (<u>id.</u>, ¶¶ 196-201), or "Claim Thirty Three" (<u>id.</u>, ¶¶ 226-30) of the "Amended Complaint-Objection to Order of

this Court," and to show cause in each such memorandum why each such new complaint should not be dismissed for want of subject matter jurisdiction due to the fact that each such "Claim" asserts only state law causes of action and lacks sufficient allegations to support the Court's exercise of diversity jurisdiction under 28 U.S.C. § 1332(a);

5) Plaintiff will be ordered to include factual allegations as to the place(s) of occurrence of the events alleged in "Claim Six" (Docket Entry 5, ¶¶ 56-62), "Claim Eight" (id., ¶¶ 70-78), "Claim Nine" (id., ¶¶ 79-82), "Claim Ten" (id., ¶¶ 83-85), "Claim Fourteen" (id., ¶¶ 106-10), "Claim Fifteen" (id., ¶¶ 111-20), "Claim Sixteen" (id., ¶¶ 121-25), "Claim Seventeen" (id., ¶¶ 126-32), "Claim Eighteen" (id., ¶¶ 133-36), "Claim Nineteen" (id., ¶¶ 137-41), "Claim Twenty Two" (id., ¶¶ 153-57), "Claim Twenty Three" (id., ¶¶ 158-65), "Claim Twenty Four" (id., ¶¶ 166-68), "Claim Twenty Five" (id., ¶¶ 169-77), "Claim Twenty Six" (id., ¶¶ 178-83), "Claim Twenty Seven" (id., ¶¶ 184-87), "Claim Twenty Eight" (id., ¶¶ 188-95), "Claim Thirty Two" (id., ¶¶ 214-25), or "Claim Thirty Three" (id., ¶¶ 226-30) of the "Amended Complaint-Objection to Order of this Court," in each new complaint as to each such "Claim";

6) Plaintiff will be ordered to include factual allegations as to the time(s) of occurrence of events alleged in "Count Three" (id., ¶¶ 23-37), "Claim Four" (id., ¶¶ 38-45), "Claim Five" (id.,

¶¶ 46-55), "Claim Six" (<u>id.</u>, ¶¶ 56-62), "Claim Eight" (<u>id.</u>, ¶¶ 70-78), "Claim Nine" (<u>id.</u>, ¶¶ 79-82), "Claim Ten" (<u>id.</u>, ¶¶ 83-85), "Claim Twelve" (<u>id.</u>, ¶¶ 94-100), "Claim Thirteen" (<u>id.</u>, ¶¶ 101-05), "Claim Fourteen" (<u>id.</u>, ¶¶ 106-10), "Claim Fifteen" (<u>id.</u>, ¶¶ 111-20), "Claim Sixteen" (<u>id.</u>, ¶¶ 121-25), "Claim Seventeen" (<u>id.</u>, ¶¶ 126-32), "Claim Eighteen" (<u>id.</u>, ¶¶ 133-36), "Claim Nineteen" (<u>id.</u>, ¶¶ 137-41), "Claim Twenty" (<u>id.</u>, ¶¶ 142-47), "Claim Twenty One" (<u>id.</u>, ¶¶ 148-52), "Claim Twenty Two" (<u>id.</u>, ¶¶ 153-57), "Claim Twenty Three" (<u>id.</u>, ¶¶ 158-65), "Claim Twenty Four" (<u>id.</u>, ¶¶ 166-68), "Claim Twenty Six" (<u>id.</u>, ¶¶ 178-83), "Claim Twenty Eight" (<u>id.</u>, ¶¶ 188-95), "Claim Thirty Two" (<u>id.</u>, ¶¶ 214-25), or "Claim Thirty Three" (<u>id.</u>, ¶¶ 226-30) of the "Amended Complaint-Objection to Order of this Court," in each new complaint as to each such "Count" or "Claim"; and

7) the portion of the "Amended Complaint-Objection to Order of this Court" that falls under the heading "Objections to the Order of this Court" (<u>id.</u> at 46-47 (with paragraphs numbered one through seven))[1] will be disregarded as an untimely objection to a non-dispositive, pretrial ruling by a United States Magistrate Judge under Federal Rule of Civil Procedure 72(a).

---

[1] Because Plaintiff commenced a new paragraph-numbering sequence under said heading, the Court will cite to page numbers (rather than to paragraph numbers) as to that portion of the "Amended Complaint-Objection to Order of this Court" in an effort to minimize confusion.

<u>BACKGROUND</u>

"On November 18, 2009, [Plaintiff] was convicted, after a trial by jury, of violating 18 U.S.C. § 2252(a)(4)(B) and 18 U.S.C. § 2252(a)(2)." <u>Burgess v. United States</u>, No. 1:09CV451-1-MU, 2010 WL 92441, at *1 (W.D.N.C. Jan. 6, 2010) (unpublished). He has since remained "in custody based upon [those] conviction[s] in the Western District of North Carolina . . . [for which he] was sentenced to a total of 292 months' imprisonment." <u>Burgess v. Lappin</u>, C/A No. 2:11-2074-CMC-BHH, 2011 WL 4950061, at *2 (D.S.C. Oct. 18, 2011) (unpublished). Plaintiff "is well-versed in the filing requirements of a variety of actions in the courts, having filed over thirty (30) actions in th[e] District [of South Carolina] alone." <u>Id.</u> at *2 n.4.

Those filings in the District of South Carolina included a case Plaintiff brought "under 42 U.S.C. § 1983 on April 4, 2002." <u>Burgess v. Taylor</u>, No. C/A 8:02-1090-22, 2003 WL 22937930, at *1 (D.S.C. Mar. 18, 2003) (unpublished), <u>aff'd</u>, 67 Fed. Appx. 820 (4th Cir. 2003). "At that time, Plaintiff was incarcerated by the United States Bureau of Prisons . . . pursuant to [an] order revoking [his] supervised release . . . dated September 21, 2001." <u>Id.</u> at *1 n.1.[2] A United States Magistrate Judge "recommend[ed]

_____

[2] Said term of supervised release arose from a federal perjury conviction Plaintiff obtained in connection with federal litigation he pursued while serving a state prison sentence. <u>See Burgess</u>, 2003 WL 22937930, at *2 ("[O]n August 20, 1985, . . . [Plaintiff] entered a plea in state court of 'guilty but mentally ill' to various charges of criminal sexual conduct involving minors. He was
(continued...)

that [said] action be dismissed for failure to state a claim." Id. at *5. The assigned United States District Judge "agree[d] with the conclusions and reasoning of the Magistrate Judge . . . [and] the Report and Recommendation of the Magistrate Judge [wa]s adopted . . . ." Id. at *1. The United States Court of Appeals for the Fourth Circuit thereafter "affirm[ed] for the reasons stated by the district court." Burgess, 67 Fed. Appx. at 821.

In addition to his litigation in the District of South Carolina and his instant case, Plaintiff also has another pending case in this Court, Burgess v. Ebay, Inc., No. 1:11CV193 (M.D.N.C.) (complaint docketed on March 7, 2011, and notarized as signed on February 14, 2011), and recently had a case dismissed as frivolous and for failure to state a claim in the District of Massachusetts, see Burgess v. Ebay, Inc., Civil Action No. 11-10334-RGS, 2011 WL 1344167 (D. Mass. Apr. 8, 2011) (unpublished) (incorporating

---

²(...continued)
sentenced to an aggregate term of 25 years and was committed to the South Carolina Department of Corrections. In 1997, [Plaintiff] was released into federal custody to begin serving a sentence for perjury."); see also United States v. Burgess, Nos. 93-5571, 93-7268, 21 F.3d 425 (table), 1994 WL 137007, at *1 & n.1 (4th Cir. Apr. 18, 1994) (unpublished) (stating that Plaintiff "pled guilty to one count of knowingly making a false material declaration in an application to proceed in forma pauperis in violation of 18 U.S.C. § 1623 . . . [and received a sentence of] sixteen months incarceration to run consecutively to the state sentence which he [was then] serving . . . [and] three years of supervised release" and identifying state sentence in question as follows: "[Plaintiff] was convicted in a South Carolina state court on August 20, 1985, of conspiring to commit criminal sexual conduct on minors, committing or attempting lewd acts upon a child under 14, and committing sexual battery of a child under 16. The court sentenced [him] to 25 years imprisonment.").

-6-

reasoning from <u>Burgess v. Ebay, Inc.</u>, Civil Action No. 11-10334-RGS, 2011 WL 841269 (D. Mass. Mar. 8, 2011) (unpublished)).[3]

The instant case began when Plaintiff paid a $350.00 filing fee (<u>see</u> Docket Entry dated May 25, 2011 (documenting receipt of payment on April 20, 2011)) and submitted a 14-page Complaint (docketed on April 21, 2011 (<u>see</u> Docket Entry 1 at 1) and notarized as signed on April 12, 2011 (<u>see</u> <u>id.</u> at 14)) which purported to name 43 Defendants in connection with claims of "breach of contract, negligence, violation of civil rights, fraud and misrepresentation" (<u>id.</u> at 1-3). After five paragraphs addressing (in conclusory fashion) the alleged basis for the Court's jurisdiction and venue, as well as the citizenship and/or residence of the putative parties (<u>id.</u> at 2-3), the Complaint sets forth 29 paragraphs of allegations (under the heading "Statement of the Facts") asserting (in conclusory fashion) that Defendants harmed Plaintiff in various ways (<u>see</u> <u>id.</u> at 3-12).

The Complaint identifies some of the putative Defendants as government officers or employees. (<u>Id.</u> at 5 (alleging that Defendant Asa McNeely "is the jail administrator at McDowell County"), 7 (referring to Defendants Steve Shortell and Don W. Farley as employees of "the Rockingham, VA., jail"), and 10

---

[3] Said dismissal has become final because the docket for said case reflects that, following the court's denial of Plaintiff's motion for reconsideration on May 5, 2011, Plaintiff failed to file a notice of appeal within 30 days as required by Federal Rule of Appellate Procedure 4(a)(1)(A). <u>See</u> Docket, <u>Burgess</u>, Civil Action No. 11-10334-RGS (Docket Entries dated May 5, 2011, to present).

(describing Defendant A. Thompson as "a police officer").) This Court has an obligation to "review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a <u>prisoner</u> seeks redress from a governmental entity or <u>officer or employee of a governmental entity</u>." 28 U.S.C. § 1915A(a) (emphasis added). As previously noted, <u>see</u> <u>supra</u>, pp. 4-5, 7, at the time he filed the Complaint, Plaintiff was incarcerated as a result of a sentence imposed for a federal criminal conviction and thus qualified as a "prisoner" within the meaning of Section 1915A, <u>see</u> 28 U.S.C. § 1915A(c).

The Court therefore reviewed the Complaint under Section 1915A, which provides, in relevant part, that: "On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint -- (1) is <u>frivolous</u>, malicious, or <u>fails to state a claim upon which relief may be granted</u>; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b) (emphasis added). After completing that review, the Court entered a Screening Order on May 20, 2011, that states, in relevant part, as follows:

> <u>Plaintiff's claims seem to lack any recognizable connection</u>. He has raised claims related to, among other things, jail conditions, legal malpractice, bad business deals, disputes over insurance payments and car parts, landlord/tenant or real estate issues, banking problems, stolen property, and a disagreement over a deposit with an electric power company.
>
>     . . . .

-8-

. . . <u>Plaintiff's claims lack sufficient factual support to state a claim for relief</u> or to allow the involved defendants to formulate a response.  Many claims consist more of legal conclusions than factual statements.  <u>Nor does it appear that many of the claims belong in the same lawsuit.</u>  Overall, Plaintiff has . . . set out exactly the sort of "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" that do not state a claim under [<u>Ashcroft v. Iqbal</u>, 556 U.S. 662, ___, 129 S. Ct. 1937, 1949 (2009)].

Because of his failure to plead a proper claim for relief, Plaintiff's Complaint is subject to dismissal. . . .  However, it appears that Plaintiff is near or beyond the statute of limitations as to some or all of his claims.  For that reason, <u>the better course of action is to stay this case for thirty days and allow Plaintiff to amend his Complaint.</u>  In filing the amended complaint, Plaintiff must set out specific facts as to each claim and defendant to establish that a viable claim for relief exists.  He must make the cause of action clear as to each claim and defendant and state to the best of his ability <u>when and where the alleged facts occurred</u>.

        . . . .

Venue in a civil action "wherein jurisdiction is not founded solely on diversity of citizenship" . . . [must satisfy] 28 U.S.C. § 1391(b).  Here, according to the Complaint, Defendants reside in multiple states.  Nothing in the Complaint suggests that any of them reside in the Middle District of North Carolina.  In the few instances where the Complaint mentions locations, it references other states or places in the Western District of North Carolina. . . .  [N]othing in the Complaint alleges that any of the acts or omissions occurred in the Middle District of North Carolina. . . .

. . . <u>Plaintiff should be aware of the potential venue problems in drafting his amended complaint and should allege enough facts for the Court to make a venue determination if one becomes necessary or appropriate</u>.

(Docket Entry 2 at 3-8 (emphasis added).)

–9–

In response to that Screening Order, Plaintiff filed the instant, 49-page "Amended Complaint-Objection to Order of this Court" which, in its caption and initial Defendant-identification paragraphs, purports to name as Defendants 42 of the 43 entities and individuals named as Defendants in the Complaint (i.e., all except Aramark Corp.), along with 12 additional individuals. (Compare Docket Entry 1 at 1-3, with Docket Entry 5, Caption and ¶¶ 3-5.)[4] The "Amended Complaint-Objection to Order of this Court" alleges in conclusory fashion that this Court has jurisdiction "under 28 U.S.C.A. §1331, and §1332," as well as venue "under 28 U.S.C.A. §1391." (Docket Entry 5, ¶ 1.) It states that Plaintiff "is a citizen and resident of Virginia" (id., ¶ 1), but its signature block lists an address in Florida for Plaintiff (id. at 48). Moreover, Plaintiff subsequently mailed the Clerk a letter stating "[m]y address is listed below" followed by an address in North Carolina. (Docket Entry 6 at 1.)

The "Amended Complaint-Objection to Order of this Court" identifies 21 of the putative individual Defendants as "citizens and residents of North Carolina" and alleges, without detail, that "[s]ome reside in the Middle District of North Carolina." (Docket

---

[4] Despite the omission of Aramark Corp. from the Caption and opening designation of Defendants, the "Amended Complaint-Objection to Order of this Court" still contains a claim against Aramark Corp. (See Docket Entry 5, ¶¶ 169-77.) In addition, the body of the "Amended Complaint-Objection to Order of this Court" purports to assert claims against John Morgan although neither its Caption nor its Defendant-identification paragraphs mention him. (Compare id., Caption and ¶¶ 3-5, with id., ¶¶ 6-16, 38-45.) The "Amended Complaint-Objection to Order of this Court" thus names a total of either 54 or 56 putative Defendants.

Entry 5, ¶ 3.)    It describes 12 additional putative individual Defendants as "citizens of other states [who] have made more than minimum contacts with the State of North Carolina . . . ." (Id., ¶ 5.)  According to the "Amended Complaint-Objection to Order of this Court," 21 putative organizational Defendants are "licensed to do business in North Carolina or are doing business in North Carolina and . . . have all made minimum contacts with the State of North Carolina . . . ." (Id., ¶ 4.)

The bulk of the "Amended Complaint-Objection to Order of this Court" consists of 33 separate "Counts" or "Claims," each of which identifies between one and eight of the 54 (or 56) putative Defendants.   (See id., ¶¶ 6-230.)   The consecutively-numbered paragraphs of the "Amended Complaint-Objection to Order of this Court" concludes with sections labeled "Statement of Claims" and "Relief Demanded" that purport to summarize the federal statutes and other laws Defendants violated, as well as the damages and other relief to which Plaintiff claims entitlement.   (See id., ¶¶ 231-44.)   The "Amended Complaint-Objection to Order of this Court" then begins a new paragraph-numbering-sequence under the heading "Objections to the Order of the Court," wherein Plaintiff "objects to the application of 28 U.S.C. §1915A to his [C]omplaint . . . [and asks] that the application of 28 U.S.C.A. §1915 or 1915A be declared unconstitutional." (Docket Entry 5 at 46-47.)  It ends

with a signature page dated June 20, 2011 (<u>id.</u> at 48) and a
"Verification" notarized as signed on June 17, 2011 (<u>id.</u> at 49).[5]

DISCUSSION

As an initial matter, the Court notes that the portion of the
"Amended Complaint-Objection to Order of this Court" in which
(under the heading "Objections to Order of this Court") Plaintiff
"objects to the application of 28 U.S.C. §1915A to his [C]omplaint
. . . [and] moves to this Court that the application of 28 U.S.C.A.
§1915 or 1915A be declared unconstitutional" (<u>id.</u> at 46-47), is
untimely under Federal Rule of Civil Procedure 72(a).   Said Rule
states:

> When a pretrial matter not dispositive of a party's claim
> or defense is referred to a magistrate judge to hear and
> decide, the magistrate judge must promptly conduct the
> required proceedings and, when appropriate, issue a
> written order stating the decision.  <u>A party may serve
> and file objections to the order within 14 days after
> being served with a copy</u>.  <u>A party may not assign as
> error a defect in the order not timely objected to</u>.  <u>The
> district judge in the case must consider timely
> objections</u> and modify or set aside any part of the order
> that is clearly erroneous or is contrary to law.

Fed. R. Civ. P. 72(a) (emphasis added).

---

[5] The 30-day amendment period authorized by the Screening Order ended on
Sunday, June 19, 2011, and thus, by operation of Federal Rule of Civil Procedure
6(a)(1)(C) and (d), Plaintiff had until June 23, 2011, to amend his Complaint.
The Clerk docketed Plaintiff's "Amended Complaint-Objection to Order of this
Court" on that date (<u>see</u> Docket Entry 5 at 1) and, therefore, Plaintiff complied
with the Screening Order's deadline without considering the prison-mailbox rule,
<u>see generally</u> <u>Houston v. Lack</u>, 487 U.S. 266 (1988).

The Screening Order did not dispose of any of Plaintiff's claims, but instead merely directed him to amend his Complaint within 30 days. (See Docket Entry 2 at 9.) Rule 72(a)'s 14-day time limit for objections therefore applied to the Screening Order and commenced on May 20, 2011, when Plaintiff was served by mail with the Screening Order. (See Docket Entry dated May 20, 2011.) That 14-day period ended on June 3, 2011, but, due to the use of mail to effect service of the Screening Order, Plaintiff received an additional three days (until June 6, 2011) to file any objections, see Fed. R. Civ. P. 6(d). Even if the Court set the filing date of the "Amended Complaint-Objection to Order of this Court" at the earliest possible point, i.e., June 17, 2011 (the date, according to the notarization on the "Verification" page, on which Plaintiff signed said filing (see Docket Entry 5 at 49)), Plaintiff did not comply with Rule 72(a)'s time limitation. Accordingly, under the plain language of Rule 72(a), the Court need not consider the portion of Plaintiff's "Amended Complaint-Objection to Order of this Court" in which he objects to the Screening Order. See, e.g., Federal Election Comm'n v. Christian Coal., 178 F.R.D. 456, 459 n.3 (E.D. Va. 1998) ("Rule 72(a) additionally provides that failure to serve timely objections waives the right to do so in the future.").

Turning to the remainder of Plaintiff's "Amended Complaint-Objection to Order of this Court," the Court observes that, in

-13-

amending his Complaint, Plaintiff added and maintained claims against government officials and employees. (See Docket Entry 5, ¶¶ 7 (describing newly-added Defendant Jack Pierce as a "guard" at the jail in Henderson County, North Carolina), 8 (identifying newly-added Defendant Ricky Davis as "Sheriff of Henderson County" and claiming that he adopted policies of denying medical treatment, "being unduly harsh and cruel to inmates[,] allowing daily beatings of inmates by the 'Beat Squad', and disallowing any books or magazines or legal materials into the jail"), 16 (listing claims against Defendant Davis, Defendant Pierce, and newly-added Defendant Pat Redden (who allegedly bore liability because "[h]er false imprisonment of the Plaintiff is the direct cause of th[e] treatment [Plaintiff experienced at the jail in Henderson County]"), including denial of medical care, as well as reading and legal materials, and subjection to cruel and unusual punishment), 17 (denominating newly-added Defendant Greg McCloud as official "responsible for the proper performance and running of the North Carolina Sex Offender Registry"), 18-19 (claiming that Defendant Redden submitted false information about Plaintiff to keep him on North Carolina's Sex Offender Registry thereby depriving Plaintiff of due process), 21 (labeling Defendant Redden as a "rogue cop"), 22 (alleging that Defendants McCloud and Redden "violat[ed] the Plaintiff's Constitutional Rights"), 40 (asserting that Defendant McNeely "is the person in charge of the McDowell County Jail"), 45

-14-

(contending that Defendant McNeely violated Plaintiff's rights to due process of law and freedom from cruel and unusual punishment), 63 (alleging that Defendants Shortell and Farley took custody of Plaintiff at the jail in Rockingham County, Virginia), 68 (positing that Defendants Shortell and Farley "violated the rights of the Plaintiff under 42 U.S.C.A. §1983"), 94 (describing Defendant Thompson as "a detective with the Brevard, N.C. Police Department" and Defendant Redden as a "rogue detective with Henderson County, N.C."), 99 (stating that Defendants Thompson and Redden denied Plaintiff "due process"), 208 (identifying newly-added Defendants K.B. Kernodle and Deputy Tilley as "police officers [who] cause[d] the [unlawful] arrest and confinement of [Joe L. Brady, who assigned said claim to Plaintiff]").

For reasons set forth above, see supra, pp. 7-8, the Court therefore must review Plaintiff's "Amended Complaint-Objection to Order of this Court" under 28 U.S.C. § 1915A. Having conducted that review, the Court concludes that this case cannot go forward for at least six reasons:

1) the "Amended Complaint-Objection to Order of this Court" joins claims against multiple defendants in contravention of Federal Rule of Civil Procedure 20(a)(2), requiring either the dropping of the vast majority of the putative Defendants (and thus the "Counts" or "Claims" against those Defendants) or severance under Federal Rule of Civil Procedure 21;

-15-

2) the allegations as to 12 of the "Counts" and "Claims" in the "Amended Complaint-Objection to Order of this Court" appear to establish that this Court lacks venue over said "Counts" and "Claims," such that Plaintiff must show cause why, if severed into separate actions, each new action containing each such "Count" or "Claim" should not be transferred to another district under 28 U.S.C. § 1406(a);

3) the allegations as to three of the "Claims" in the "Amended Complaint-Objection to Order of this Court" appear to establish that Plaintiff lacks standing to assert said "Claims," such that Plaintiff must show cause why, if severed into separate actions, each new action containing each such "Claim" should not be dismissed for want of subject matter jurisdiction;

4) 17 of the "Claims" in the "Amended Complaint-Objection to Order of this Court" appear to assert only state law causes of action and to allege insufficient facts to support the Court's exercise of diversity jurisdiction, such that Plaintiff must show cause why, if severed into separate actions, each new action containing each such "Claim" should not be dismissed for want of subject matter jurisdiction;

5) 19 of the "Claims" in the "Amended Complaint-Objection to Order of this Court" lack sufficient factual allegations as to the place(s) of occurrence of the events alleged; and

-16-

6) 24 of the "Counts" and "Claims" in the "Amended Complaint-Objection to Order of this Court" lack sufficient factual allegations as to the time(s) of occurrence of the events alleged.

## Improper Joinder

As set out in the Background section (see supra, pp. 9-11 & n.4), the "Amended Complaint-Objection to Order of this Court" purports to assert 33 separate "Counts" or "Claims" against entirely disparate groupings of between one and eight of the total number of 54 or 56 putative Defendants. "A party asserting a claim . . . may join, as independent or alternative claims, as many claims as it has against an opposing party." Fed. R. Civ. P. 18(a) (emphasis added). "Thus multiple claims against a single party are fine . . . ." George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007).

However, where, as here, a plaintiff seeks to join not multiple claims against a single defendant, but multiple claims against multiple defendants, another provision of the Federal Rules of Civil Procedure comes into play, i.e., the limitation that "[p]ersons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2) (emphasis added).

-17-

In other words, "[u]nrelated claims against different defendants belong in different suits . . . ." <u>George</u>, 507 F.3d at 607.[6]

The "Counts" and "Claims" in Plaintiff's "Amended Complaint-Objection to Order of this Court" run too wide a temporal, geographic, and subject matter gamut to permit joinder under Rule 20(a)(2), as shown by this summary of said "Counts" and "Claims":

1) denial of medical care and imposition of other forms of cruel and unusual punishment in the jail in Henderson County, North Carolina, in June 2008 (Docket Entry 5, ¶¶ 6-16 ("Count One"));

2) unconstitutional submission and inclusion of false information in North Carolina's Sex Offender Registry at unidentified places from April 2008 to August 2010 (<u>id.</u>, ¶¶ 17-22 ("Count Two"));

3) breach of contract, as well as denial of due process and equal protection, arising from the handling of property in a storage unit in Hendersonville, North Carolina, at unspecified times (<u>id.</u>, ¶¶ 23-37 ("Count Three"));

---

[6] Many district courts outside the Seventh Circuit, including a number in the Fourth Circuit, expressly have followed <u>George</u> on this and related points. <u>See, e.g.</u>, <u>Woods v. County of Wilson</u>, No. 5:10CT3118BO, 2011 4460619, at *4 (E.D.N.C. Sept. 26, 2011) (unpublished); <u>Chandler v. James</u>, 783 F. Supp. 2d 33, 39 (D.D.C. 2011); <u>Proctor v. Applegate</u>, 661 F. Supp. 2d 743, 779 (E.D. Mich. 2009); <u>Showalter v. Johnson</u>, No. 7:08CV276, 2009 WL 1321694, at *4 (W.D. Va. May 12, 2009) (unpublished); <u>Robinson v. Johnson</u>, No. 3:07CV449, 2009 WL 874530, at *1 (E.D. Va. Mar. 26, 2009) (unpublished); <u>McCoy v. Willis</u>, No. 4:07CV3563-PMD-TER, 2008 WL 4221745, at *5 (D.S.C. Sept. 15, 2008) (unpublished).

4) denial of medical care and imposition of other forms of cruel and unusual punishment in the jail in McDowell County, North Carolina, on unidentified times (<u>id.</u>, ¶¶ 38-45 ("Claim Four"));

5) violation of North Carolina's Unfair and Deceptive Trade Practices Act ("UDTPA"), federal antitrust law, and the constitutional right of access to courts by the company that runs the telephone system in the jail in Buncombe County, North Carolina, at unspecified times (<u>id.</u>, ¶¶ 46-55 ("Claim Five"));

6) deprivation of due process and equal protection due to the unlawful accessing of North Carolina's and South Carolina's Sex Offender Registries at unidentified times and places (<u>id.</u>, ¶¶ 56-62 ("Claim Six"));

7) cruel and unusual punishment in June 2008, in the form of denial of medicine, food, water, sleep, clothing, and recreation at the jail in Rockingham County, Virginia, as well as exposure to second-hand smoke and excessively-long confinement in restraints in transit to Hendersonville, North Carolina (<u>id.</u>, ¶¶ 63-69 ("Claim Seven"));

8) violation of North Carolina stolen property laws and federal immigration laws related to the operation of a flea market at an unidentified place and time (<u>id.</u>, ¶¶ 70-78 ("Claim Eight"));

9) breach of contract in connection with the sale of collectibles at an unspecified place and time (<u>id.</u>, ¶¶ 79-82 ("Claim Nine"));

10) breach of contract as to electrical power service at an unidentified place and time (id., ¶¶ 83-85 ("Claim Ten"));

11) cruel and unusual punishment in the form of denial of medical care in the jail at Buncombe County, North Carolina, in November 2010 (id., ¶¶ 86-93 ("Claim Eleven"));

12) intentional and retaliatory institution of false charges in violation of due process in Transylvania County, North Carolina, on unspecified times (id., ¶¶ 94-100 ("Claim Twelve"));

13) common law fraud in connection with state civil litigation at unidentified places and times (id., ¶¶ 101-05 ("Claim Thirteen"));

14) usury in the provision of bail bonds at unspecified places and times (id., ¶¶ 106-10 ("Claim Fourteen"));

15) violation of North Carolina's UDTPA by the manufacturer of certain products utilized in jails and prisons at unidentified places and times (id., ¶¶ 111-20 ("Claim Fifteen"));

16) sale of a faulty automobile part and dealing in bad faith at unspecified places and times (id., ¶¶ 121-25 ("Claim Sixteen"));

17) fraud in the sale by auction of a coat at an unidentified place and time (id., ¶¶ 126-32 ("Claim Seventeen"));

18) fraud in connection with dealings related to storage units at unspecified places and times (id., ¶¶ 133-36 ("Claim Eighteen"));

19) breach of contract regarding monies owed at unidentified places and times (<u>id.</u>, ¶¶ 137-41 ("Claim Nineteen"));

20) negligent misrepresentations by an expert witness at unspecified places and times (<u>id.</u>, ¶¶ 142-47 ("Claim Twenty"));

21) defamation related to articles that appeared in the Charlotte Observer at unidentified times after Plaintiff's criminal trial in November 2009 (<u>id.</u>, ¶¶ 148-52 ("Claim Twenty One"));

22) fraud in connection with the renting of an apartment at an unidentified place and time (<u>id.</u>, ¶¶ 153-57 ("Claim Twenty Two"));

23) breach of contract, fraud, and related claims arising from litigation related to business dealings at unspecified places and times (<u>id.</u>, ¶¶ 158-65 ("Claim Twenty Three"));

24) federal banking and privacy law violations regarding the removal of money from a checking account at unidentified places and times (<u>id.</u>, ¶¶ 166-68 ("Claim Twenty Four"));

25) violation of North Carolina's UDTPA related to the provision of canteen services at the jail in McDowell County, North Carolina, at unspecified times (<u>id.</u>, ¶¶ 169-77 ("Claim Twenty Five"));

26) breach of contract and professional malpractice in connection with a state collection action at unidentified places and times (<u>id.</u>, ¶¶ 178-83 ("Claim Twenty Six"));

27) federal banking and privacy law violations arising from the release of financial records in the spring of 2008 at unspecified places (id., ¶¶ 184-87 ("Claim Twenty Seven"));

28) violation of state and federal banking laws related to the writing of certain checks at unidentified places and times (id., ¶¶ 188-95 ("Claim Twenty Eight"));

29) fraud in connection with a legal malpractice action originally filed in a state court in the Middle District of North Carolina in 2009 regarding a prior lawsuit in Granville County, North Carolina (id., ¶¶ 196-201 ("Claim Twenty Nine"));

30) unlawful debt collection under federal and state law at unspecified places and times (id., ¶¶ 202-07 ("Claim Thirty"));

31) unlawful arrest and detention at an unspecified place and time (id., ¶¶ 208-13 ("Claim Thirty One"));

32) criminal fraud and computer intrusion related to civil litigation at unidentified places and times (id., ¶¶ 214-25 ("Claim Thirty Two")); and

33) fraud and misrepresentation arising from a contract for internet research at unspecified places and times (id., ¶¶ 226-30 ("Claim Thirty Three")).

The Screening Order highlighted this misjoinder issue by noting that Plaintiff's "claims seem[ed] to lack any recognizable connection. He has raised claims related to, among other things, jail conditions, legal malpractice, bad business deals, disputes

-22-

over insurance payments and car parts, landlord/tenant or real estate issues, banking problems, stolen property, and a disagreement over a deposit with an electric power company." (Docket Entry 2 at 3; see also id. at 6 ("Nor does it appear that many of the claims belong in the same lawsuit.").) Because Plaintiff's Complaint lacked sufficient factual content to state any claim, the Court did not need to address misjoinder further at that time; however, with the factual detail Plaintiff has added in his "Amended Complaint-Objection to Order of this Court," the unsustainability of his effort to join 33 distinct "Counts" and "Claims" against different (entirely non-overlapping) groupings of between one and eight of 54 or 56 putative Defendants has become so clear that the Court must now deal with the misjoinder issue. See George, 507 F.3d at 607 ("The district court did not question [the plaintiff's] decision to join 24 defendants, and approximately 50 distinct claims, in a single suit. It should have done so.").

As with the complaint in George, Plaintiff's "Amended Complaint-Objection to Order of this Court" does "not make any effort to show that the [54 or 56] defendants he named had participated in the same transaction or series of transactions or that a question of fact is common to all defendants." Id. (internal quotation marks omitted). The Court therefore must not allow Plaintiff to proceed on the "Amended Complaint-Objection to Order this Court." See id. ("A buckshot complaint that would be

-23-

rejected if filed by a free person - say, a suit complaining that A defrauded the plaintiff, B defamed him, C punched him, D failed to pay a debt, and E infringed his copyright, all in different transactions - should be rejected if filed by a prisoner.").

Courts must enforce Rule 20's joinder limitations in cases such as this one "not only to prevent the sort of morass that [results when a plaintiff puts dozens of claims against dozens of defendants into one complaint] but also to ensure that prisoners pay the required filing fees . . . ." Id. Plaintiff effectively has sought to commence 33 lawsuits for the price of one $350.00 filing fee. This Court, like others before, see, e.g., Showalter v. Johnson, No. 7:08CV276, at *4 (W.D. Va. May 12, 2009) (unpublished), declines to permit such fee-avoidance.

Moreover, by improperly joining unrelated claims against multiple defendants, Plaintiff perhaps "was trying not only to save money but also to dodge th[e] [Prison Litigation Reform Act ("PLRA")]." George, 507 F.3d at 607. "[T]he 'three strikes' provision of the . . . [PLRA] generally prohibits a prisoner from proceeding in forma pauperis ('IFP') if he has previously had three or more actions dismissed as frivolous, malicious, or for failing to state a claim." Tolbert v. Stevenson, 635 F.3d 646, 647 (4th Cir. 2011) (citing 28 U.S.C. § 1915(g)). By attempting to lump his 33 "Counts" or "Claims" together, Plaintiff may have "hoped that if even 1 of his [33] claims were deemed non-frivolous [or sufficient

to state a claim], he would receive no 'strikes' at all, as opposed to the [32] that would result from making [32] frivolous [or legally insufficient] claims in a batch of [33] suits." <u>George</u>, 507 F.3d at 607.  Indeed, Plaintiff has particular cause to attempt to avoid a decision that would constitute a "strike" under the PLRA because, as documented in the Background section (<u>see</u> <u>supra</u>, pp. 5-6 & nn.2, 3), he now has two such "strikes" (i.e., the dismissals in <u>Burgess</u>, 2003 WL 22937930, and <u>Burgess</u>, 2011 WL 1344167) and thus a third "strike" would subject him to the PLRA's IFP ban.  The Court (again, in line with the actions of other courts, <u>see, e.g.</u>, <u>Showalter</u>, 2009 WL 1321694, at *4) will not allow Plaintiff to insulate himself from the PLRA through misjoinder.

Having determined that the case cannot move forward via the "Amended Complaint-Objection to Order of this Court," the Court must select the proper curative step.  In this regard, the Federal Rules of Civil Procedure provide that "[m]isjoinder of parties is not a ground for dismissing an action.  On motion or on its own, the court may at any time, on just terms, add or drop a party.  The court may also sever any claim against a party."  Fed. R. Civ. P. 21.  "Where, as here, statute of limitations concerns arise, courts should sever rather than simply dismiss the misjoined claims [by dropping defendants]."  <u>Robinson v. Johnson</u>, No. 3:07CV449, 2009 WL 874530, at *2 (E.D. Va. Mar. 26, 2009) (unpublished).

To accomplish the required severance, "Plaintiff must file new complaints for his severed claims. Any forthcoming new complaints must comport with Rules 8 and 20 of the Federal Rules of Civil Procedure . . . [and] must stand or fall of their own accord." <u>Id.</u> To the right of the caption of each such new complaint, Plaintiff must place the following words: "NEW COMPLAINT FOR SEVERED COUNT/CLAIM _____ IN 1:11CV316," with the corresponding number in the blank. <u>See id.</u> Because of the volume of severed claims involved, the Court will give Plaintiff until December 30, 2011, to file any new, successor complaints. "The failure to submit a proper new complaint for any ['Count' or 'Claim' in the "Amended Complaint-Objection to Order of this Court" by December 30, 2011] will result in the dismissal of that ['Count' or 'Claim']." <u>Id.</u>

"Plaintiff will be responsible for the full filing fee for each new complaint he submits." <u>Id.</u>; <u>accord</u> <u>Showalter</u>, 2009 WL 1321694, at *6 ("Each new lawsuit will obligate [the plaintiff] to pay the $350.00 district court filing fee pursuant to 28 U.S.C. § 1915(g)."). If Plaintiff takes the position that he lacks sufficient funds to pay the full $350.00 filing fee applicable to each new complaint for each severed "Count" or "Claim" in "Amended Complaint-Objection to Order of this Court" at the time of filing, he must file a proper application for IFP status with each new complaint as to which he does not pay the full filing fee. The Court will conduct appropriate screening under 28 U.S.C.

§ 1915(e)(2) as to any such new, successor complaint for which
Plaintiff seeks IFP status and/or under 28 U.S.C. § 1915A(b) as to
any such new, successor complaint in which Plaintiff seeks redress
from a governmental official or employee.

<u>Improper Venue</u>

As detailed in the Background section, <u>supra</u>, p. 9, the
Screening Order advised Plaintiff of the venue requirements and
highlighted both the apparent lack of venue reflected by certain
allegations in the Complaint and the absence of allegations
necessary for a complete assessment of venue questions. Moreover,
it directed Plaintiff to "be aware of the potential venue problems
in drafting his amended complaint and [to] allege enough facts for
the Court to make a venue determination if one becomes necessary or
appropriate." (Docket Entry 2 at 8.) A review of the "Amended
Complaint-Objection to Order of this Court" reveals that Plaintiff
did not heed this instruction. To the contrary, as shown in the
earlier summary of the "Amended Complaint-Objection to Order of
this Court," <u>supra</u>, pp. 18-22, as to virtually all of the "Counts"
and "Claims," venue <u>either</u> appears lacking (in that, based on the
allegations, no Defendant therein appears to reside in the Middle
District of North Carolina, a substantial part of the events
described therein failed to occur in the Middle District of North
Carolina, and another district exists where venue would lie, <u>see</u> 28

U.S.C. § 1391(a) and (b)) or Plaintiff has pled insufficient facts to permit any determination as to the propriety of venue.

If (consistent with the discussion in the preceding subsection, supra, pp. 25-26) Plaintiff files new complaints as to Counts One, Two, and Three and/or Claims Four, Five, Seven, Eleven, Twelve, Thirteen, Twenty, Twenty One, and Twenty Five of the "Amended Complaint-Objection to Order of this Court," the Court will have to consider transfer under 28 U.S.C. § 1406(a), in light of the lack of venue apparent on the face of Plaintiff's prior allegations as to each such "Count" or "Claim." See LaVay Corp. v. Dominion Fed. Sav. & Loan Ass'n, 830 F.2d 522, 526 (4th Cir. 1987) ("[If] venue [i]s improper . . ., transfer of [Plaintiff's] action [i]s required under 28 U.S.C. § 1406(a)."). "Although a motion by one of the parties is ordinarily required for transfer, the district court may consider the possibility of transfer sua sponte . . . [but generally must afford] an opportunity to be heard before a decision is rendered." Feller v. Brock, 802 F.2d 722, 729 n.7 (4th Cir. 1986); accord Caldwell v. Palmetto State Sav. Bank of S.C., 811 F.2d 916, 919 (5th Cir. 1987) ("Under the transfer statute, a district court may transfer a case upon a motion or sua sponte."). Accordingly, the Court will direct Plaintiff to file contemporaneously with any such new complaint a memorandum of up to five pages showing cause why the Court should not transfer that complaint to another district under Section 1406(a).

-28-

In addition, for reasons stated in a subsection to follow, see infra, pp. 31-32, the Court will order Plaintiff to include, in any new complaints as to other "Counts" and "Claims" in the "Amended Complaint-Objection to Order of this Court," additional allegations regarding the place(s) where the events at issue occurred. After reviewing those new complaints, the Court may require Plaintiff to show cause as to why it should not transfer those new complaints to another district under Section 1406(a), as well.

<u>Lack of Standing</u>

"It is well settled that under Article III of the United States Constitution a plaintiff must establish that a case or controversy exists between himself and the defendant and cannot rest his claim to relief on the legal rights or interests of third parties." <u>Smith v. Frye</u>, 488 F.3d 263, 272 (4th Cir. 2007) (describing "dismissal for lack of standing" as dismissal "for lack of jurisdiction") (internal quotation marks omitted). To satisfy the Constitution's "standing limitation," a plaintiff must allege "such a personal stake in the outcome of the controversy as to warrant his invocation of federal court jurisdiction and to justify exercise of the court's remedial powers on his behalf." <u>White Tail Park, Inc. v. Stroube</u>, 413 F.3d 451, 458 (4th Cir. 2005) (internal brackets and quotation marks omitted)).

As to "Claim Twenty Nine" (Docket Entry 5, ¶¶ 196-201), "Claim Thirty" (<u>id.</u>, ¶¶ 202-07), and "Claim Thirty One" (<u>id.</u>, ¶¶ 208-13)

-29-

of the "Amended Complaint-Objection to Order of this Court,"
Plaintiff purports to proceed based "on assignment from Joe L.
Brady." As reflected in the prior summary, <u>see supra</u>, pp. 21-22,
Claims Twenty Nine, Thirty, and Thirty One set forth allegations of
torts against persons under federal and/or North Carolina law.
Both federal and North Carolina law generally prohibit the
assignment of such tort claims. <u>See Caldwell v. Ogden Sea Transp.,
Inc.</u>, 618 F.2d 1037, 1048 (4th Cir. 1980) (acknowledging "general
rule of the non-assignability of personal injury claims" and
describing its "main purposes . . . [as] prevent[ing] unscrupulous
strangers to an occurrence from preying on the depraved
circumstances of an injured person, and [] prohibit[ing]
champerty"); <u>see also id.</u> at 1052 (Widener, J., concurring and
dissenting) (quoting <u>Comegys v. Vasse</u>, 26 U.S. (1 Pet.) 193, 213
(1828), for proposition "'that mere personal torts, which die with
the party, and which do not survive to his personal representative,
are not capable of passing by assignment,'" and observing that
"research ha[d] uncovered no case modifying this general rule under
federal law"); <u>Atlantic Coast Mech., Inc. v. Arcadis, Geraghty &
Miller of N.C., Inc.</u>, 175 N.C. App. 339, 343, 623 S.E.2d 334, 338
(2006) ("It is well-established in this state that personal tort
claims are not assignable because such assignments would be void
against public policy because they promote champerty.") (citing,

-30-

inter alia, <u>Charlotte-Mecklenburg Hosp. Auth. v. First of Ga. Ins. Co.</u>, 340 N.C. 88, 91, 455 S.E.2d 655, 657 (1995)).

The Court thus will order that, if (consistent with the severance requirement discussed in a preceding subsection, <u>supra</u>, pp. 25-26) Plaintiff files new complaints as to Claims Twenty Nine, Thirty, and Thirty One, he also file contemporaneously with such new complaints a memorandum of up to five pages showing cause why each such new complaint should not be dismissed for want of subject matter jurisdiction due to Plaintiff's lack of standing.

<u>Lack of Diversity Jurisdiction</u>

Once Plaintiff files any new complaints to accomplish the required severance, <u>see</u> <u>supra</u>, pp. 25-26, each such new complaint must stand on its own, including as to the existence of subject matter jurisdiction. <u>See generally</u> Robinson, 2009 WL 874530, at *2 ("Any forthcoming new complaints [carrying out a required severance] . . . must stand or fall of their own accord."). "Claim Nine" (Docket Entry 5, ¶¶ 79-82), "Claim Ten" (<u>id.</u>, ¶¶ 83-85), "Claim Thirteen" (<u>id.</u>, ¶¶ 101-05), "Claim Fourteen" (<u>id.</u>, ¶¶ 106-10), "Claim Fifteen" (<u>id.</u>, ¶¶ 111-20), "Claim Sixteen" (<u>id.</u>, ¶¶ 121-25), "Claim Seventeen" (<u>id.</u>, ¶¶ 126-32), "Claim Eighteen" (<u>id.</u>, ¶¶ 133-36), "Claim Nineteen" (<u>id.</u>, ¶¶ 137-41), "Claim Twenty" (<u>id.</u>, ¶¶ 142-47), "Claim Twenty One" (<u>id.</u>, ¶¶ 148-52), "Claim Twenty Two" (<u>id.</u>, ¶¶ 153-57), "Claim Twenty Three" (<u>id.</u>, ¶¶ 158-65), "Claim Twenty Five" (<u>id.</u>, ¶¶ 169-77), "Claim Twenty Six" (<u>id.</u>,

¶¶ 178-83), "Claim Twenty Nine" (id., ¶¶ 196-201), and "Claim
Thirty Three" (id., ¶¶ 226-30) of the "Amended Complaint-Objection
to Order of this Court" assert only state law causes of action and
fail to allege sufficient facts to support the Court's exercise of
diversity jurisdiction under 28 U.S.C. § 1332(a).

For any new complaint as to said "Claims," the Court therefore
will order Plaintiff to contemporaneously file a memorandum of up
to five pages showing cause why the Court should not dismiss any
such new complaint(s) for want of subject matter jurisdiction.

### Lack of Allegations as to Place

"An allegation of . . . place is material when testing the
sufficiency of a pleading." Fed. R. Civ. P. 9(f). As documented
in the prior summary of the "Counts" and "Claims" in the "Amended
Complaint-Objection to Order of this Court," see supra, pp. 18-22,
the allegations in Claims Six, Eight, Nine, Ten, Fourteen, Fifteen,
Sixteen, Seventeen, Eighteen, Nineteen, Twenty Two, Twenty Three,
Twenty Four, Twenty Five, Twenty Six, Twenty Seven, Twenty Eight,
Thirty Two, and Thirty Three fail to provide sufficient information
as to the place(s) where the events at issue occurred. Because of
the materiality of allegations of "place" to the evaluation of the
sufficiency of a complaint, the Court will order Plaintiff to
allege where events relevant to the above-referenced claims took
place in any new complaints he files as part of the severance
required in this case, see supra, pp. 25-26.

<u>Lack of Allegations as to Time</u>

"An allegation of time . . . is material when testing the sufficiency of a pleading." Fed. R. Civ. P. 9(f). As documented in the prior summary of the "Counts" and "Claims" in the "Amended Complaint-Objection to Order of this Court," <u>see</u> <u>supra</u>, pp. 18-22, the allegations in Count Three and Claims Four, Five, Six, Eight, Nine, Ten, Twelve, Thirteen, Fourteen, Fifteen, Sixteen, Seventeen, Eighteen, Nineteen, Twenty, Twenty One, Twenty Two, Twenty Three, Twenty Four, Twenty Six, Twenty Eight, Thirty Two, and Thirty Three fail to provide sufficient information as to the time(s) when the events at issue occurred. Because of the materiality of allegations of "time" to the evaluation of the sufficiency of a complaint, the Court will order Plaintiff to allege when events relevant to the above-referenced claims took place in any new complaints he files as part of the severance required in this case, <u>see</u> <u>supra</u>, pp. 25-26.

<u>CONCLUSION</u>

Plaintiff has misjoined claims against multiple defendants in contravention of Federal Rule of Civil Procedure 20(a)(2), requiring severance pursuant to Federal Rule of Civil Procedure 21. Because certain of Plaintiff's claims contain allegations showing lack of venue, standing, and/or diversity jurisdiction, he must show cause why the Court should not transfer or dismiss any post-severance, successor complaints Plaintiff files as to such claims.

-33-

In filing new complaints to carry out the required severance, Plaintiff also must include sufficient allegations as to the material matters of place and time. Finally, Plaintiff's objections to the Screening Order were untimely.

**IT IS THEREFORE ORDERED** as follows:

1) on or before December 30, 2011, for <u>each</u> of the 33 "Counts" or "Claims" in the "Amended Complaint-Objection to Order of this Court" (<u>see</u> Docket Entry 5, ¶¶ 6-235) that Plaintiff wishes to pursue, Plaintiff shall submit: A) a separate, independent, and legally sufficient new complaint that states to the right of the caption, "NEW COMPLAINT FOR SEVERED COUNT/CLAIM _____ IN 1:11CV316," with the corresponding number in the blank; <u>and</u> B) <u>either</u> a $350.00 filing fee <u>or</u> a proper application to proceed as a pauper;

2) if Plaintiff files a new complaint as to "Count One" (<u>id.</u>, ¶¶ 6-16), "Count Two" (<u>id.</u>, ¶¶ 17-22), "Count Three" (<u>id.</u>, ¶¶ 23-37), "Claim Four" (<u>id.</u>, ¶¶ 38-45), "Claim Five" (<u>id.</u>, ¶¶ 46-55), "Claim Seven" (<u>id.</u>, ¶¶ 63-69), "Claim Eleven" (<u>id.</u>, ¶¶ 86-93), "Claim Twelve" (<u>id.</u>, ¶¶ 94-100), "Claim Thirteen" (<u>id.</u>, ¶¶ 101-05), "Claim Twenty" (<u>id.</u>, ¶¶ 142-47), "Claim Twenty One" (<u>id.</u>, ¶¶ 148-52), or "Claim Twenty Five" (<u>id.</u>, ¶¶ 169-77) of the "Amended Complaint-Objection to Order of this Court," he shall contemporaneously file a <u>separate</u> memorandum up to five pages in length with <u>each</u> such complaint showing cause in each such

-34-

memorandum why each such new complaint should not be transferred to another district via 28 U.S.C. § 1406(a);

3) if Plaintiff files a new complaint as to "Claim Twenty Nine" (Docket Entry 5, ¶¶ 196-201), "Claim Thirty" (<u>id.</u>, ¶¶ 202-07), or "Claim Thirty One" (<u>id.</u>, ¶¶ 208-13) of the "Amended Complaint-Objection to Order of this Court," he shall contemporaneously file a <u>separate</u> memorandum up to five pages in length with <u>each</u> such complaint showing cause in each such memorandum why each such new complaint should not be dismissed for want of subject matter jurisdiction due to Plaintiff's lack of standing;

4) if Plaintiff files a new complaint as to "Claim Nine" (<u>id.</u>, ¶¶ 79-82), "Claim Ten" (<u>id.</u>, ¶¶ 83-85), "Claim Thirteen" (<u>id.</u>, ¶¶ 101-05), "Claim Fourteen" (<u>id.</u>, ¶¶ 106-10), "Claim Fifteen" (<u>id.</u>, ¶¶ 111-20), "Claim Sixteen" (<u>id.</u>, ¶¶ 121-25), "Claim Seventeen" (<u>id.</u>, ¶¶ 126-32), "Claim Eighteen" (<u>id.</u>, ¶¶ 133-36), "Claim Nineteen" (<u>id.</u>, ¶¶ 137-41), "Claim Twenty" (<u>id.</u>, ¶¶ 142-47), "Claim Twenty One" (<u>id.</u>, ¶¶ 148-52), "Claim Twenty Two" (<u>id.</u>, ¶¶ 153-57), "Claim Twenty Three" (<u>id.</u>, ¶¶ 158-65), "Claim Twenty Five" (<u>id.</u>, ¶¶ 169-77), "Claim Twenty Six" (<u>id.</u>, ¶¶ 178-83), "Claim Twenty Nine" (<u>id.</u>, ¶¶ 196-201), or "Claim Thirty Three" (<u>id.</u>, ¶¶ 226-30) of the "Amended Complaint-Objection to Order of this Court," he shall contemporaneously file a <u>separate</u> memorandum up to five pages in length with <u>each</u> such complaint showing cause in each

such memorandum why each such new complaint should not be dismissed for want of subject matter jurisdiction due to the fact that each such "Claim" asserts only state law causes of action and does not allege sufficient facts to support the Court's exercise of diversity jurisdiction under 28 U.S.C. § 1332(a);

5) if Plaintiff files a new complaint as to "Claim Six" (Docket Entry 5, ¶¶ 56-62), "Claim Eight" (id., ¶¶ 70-78), "Claim Nine" (id., ¶¶ 79-82), "Claim Ten" (id., ¶¶ 83-85), "Claim Fourteen" (id., ¶¶ 106-10), "Claim Fifteen" (id., ¶¶ 111-20), "Claim Sixteen" (id., ¶¶ 121-25), "Claim Seventeen" (id., ¶¶ 126-32), "Claim Eighteen" (id., ¶¶ 133-36), "Claim Nineteen" (id., ¶¶ 137-41), "Claim Twenty Two" (id., ¶¶ 153-57), "Claim Twenty Three" (id., ¶¶ 158-65), "Claim Twenty Four" (id., ¶¶ 166-68), "Claim Twenty Five" (id., ¶¶ 169-77), "Claim Twenty Six" (id., ¶¶ 178-83), "Claim Twenty Seven" (id., ¶¶ 184-87), "Claim Twenty Eight" (id., ¶¶ 188-95), "Claim Thirty Two" (id., ¶¶ 214-25), or "Claim Thirty Three" (id., ¶¶ 226-30) of the "Amended Complaint-Objection to Order of this Court," Plaintiff shall include factual allegations as to the place(s) of occurrence of the events alleged as to each such "Claim";

6) if Plaintiff files a new complaint as to "Count Three" (id., ¶¶ 23-37), "Claim Four" (id., ¶¶ 38-45), "Claim Five" (id., ¶¶ 46-55), "Claim Six" (id., ¶¶ 56-62), "Claim Eight" (id., ¶¶ 70-78), "Claim Nine" (id., ¶¶ 79-82), "Claim Ten" (id., ¶¶ 83-85),

"Claim Twelve" (id., ¶¶ 94-100), "Claim Thirteen" (id., ¶¶ 101-05), "Claim Fourteen" (id., ¶¶ 106-10), "Claim Fifteen" (id., ¶¶ 111-20), "Claim Sixteen" (id., ¶¶ 121-25), "Claim Seventeen" (id., ¶¶ 126-32), "Claim Eighteen" (id., ¶¶ 133-36), "Claim Nineteen" (id., ¶¶ 137-41), "Claim Twenty" (id., ¶¶ 142-47), "Claim Twenty One" (id., ¶¶ 148-52), "Claim Twenty Two" (id., ¶¶ 153-57), "Claim Twenty Three" (id., ¶¶ 158-65), "Claim Twenty Four" (id., ¶¶ 166-68), "Claim Twenty Six" (id., ¶¶ 178-83), "Claim Twenty Eight" (id., ¶¶ 188-95), "Claim Thirty Two" (id., ¶¶ 214-25), or "Claim Thirty Three" (id., ¶¶ 226-30) of the "Amended Complaint-Objection to Order of this Court," Plaintiff shall include factual allegations as to the time(s) of occurrence of events alleged as to each such "Count" or "Claim"; and

7) the portion of the "Amended Complaint-Objection to Order of this Court" that falls under the heading "Objections to the Order of this Court" (id. at 46-47) will be disregarded as an untimely objection to a non-dispositive, pretrial ruling by a Magistrate Judge under Federal Rule of Civil Procedure 72(a).

**A FAILURE BY PLAINTIFF TO COMPLY WITH THIS ORDER IN A TIMELY MANNER WILL RESULT IN DISMISSAL WITHOUT PREJUDICE OF THIS ACTION WITHOUT FURTHER NOTICE TO PLAINTIFF. A FAILURE BY PLAINTIFF TO SUBMIT A PROPER NEW COMPLAINT FOR ANY "COUNT" OR "CLAIM" IN THE "AMENDED COMPLAINT-OBJECTION TO ORDER OF THIS COURT" BY DECEMBER**

30, 2011, WILL RESULT IN THE DISMISSAL WITHOUT PREJUDICE OF THAT "COUNT" OR "CLAIM" WITHOUT FURTHER NOTICE TO PLAINTIFF.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

November 2, 2011